BURKE, Judge.
Curtis Wardnell Caver appeals his convictions of first-degree unlawful possession of marijuana, a violation of § 13A-12-213, Ala. Code 1975, and first-degree possession of drug paraphernalia, a violation of § 13A-12-260(a)(5), Ala. Code 1975, and his resulting sentences of 50 years’ imprisonment and 12 months in the Mobile Metro Jail, respectively. The sentences were to run consecutively with each other and any other sentence he was serving at the time of the sentencing hearing.
At trial, the State presented the following evidence: Officer Julian Nettles, an officer with the Mobile Police Department’s Narcotics and Vice Unit at the time of the incident, testified that on May 1, 2014, he and seven other officers executed a search warrant at a specific address on Melrose Street. Through his prior investigation, Officer Nettles had determined that Caver and Deidra White, Caver’s girlfriend, lived at the location. When the officers arrived at the location, they observed a “silverish-gold” Chevrolet Impala automobile parked in the driveway; and the vehicle was occupied by Caver, Deidra White, Shawna White, and another individual. (R. 98.) As the officers approached the vehicle, Officer Nettles saw smoke coming from the vehicle, and it appeared that the individuals inside the vehicle were smoking marijuana. Officer Nettles also observed a hand that appeared to be tossing something out of the vehicle. Officers later *5 found a partially burnt marijuana blunt in between the seats of the vehicle. The officers removed the occupants from the vehicle and detained them in handcuffs for the safety of the officers. As the officers approached the house, they saw three other people on the porch and detained them. The officers then entered to the house and secured the residence.
Officer Nettles stated that, once inside the house, he recovered a medium-sized black tote bag in a bedroom. Inside the tote bag, he found eight individually wrapped clear bags containing a green plant-like substance he believed to be marijuana. Officer Nettles also recovered a small pink tin can from the tote bag. Officer Nettles popped open the can and found two more small bags that he believed to be “analogue marijuana.” (R. 101.) The tote bag also contained a digital scale. A picture of each item found in the tote bag was entered into evidence and published to the jury, as well as a picture of mail with Caver’s name on it that was recovered inside the room near the tote bag. In addition to the mail found in the room, Officer Nettles stated that he also identified who the bedroom belonged to by a framed picture that depicted Caver and White. Officer Nettles testified that there were no other drugs found in the house except in the bedroom.
Officer Nettles testified that, through his training and experience, the manner in which the marijuana was packaged in small individual bags was consistent with the illegal sale of narcotics. Officer Nettles also knew from his training and experience that the digital scale found with the marijuana was similar to ones he had seen used in the sale of drugs. The marijuana seized at the scene was packaged and sent to the Department of Forensic Sciences (“DFS”) for testing.
Mary Burns, a forensic scientist with DFS, testified that one of the eight small clear bags found at the residence tested positive for marijuana.
The State rested its case, and defense counsel moved for a judgment of acquittal, arguing that the State “failed to prove who this marijuana belonged to.” (R. 124.) The circuit court denied the motion.
Deidra White, testified on behalf of the defendant. She claimed that the house on Melrose Street was owned by her grandmother and that Caver did not live there. She claimed that the bag and the marijuana found in the bedroom belonged to her and that the mail with Caver’s name on it was some letters that she had written to Caver when he was in prison on an unrelated case. She claimed that the letters had been returned to her because she had put an incorrect address on the envelopes.
I.
Caver argues that the State failed to present sufficient evidence to convict him of the unlawful possession of marijuana, a violation of § 13A-12-213, Ala. Code 1975. Specifically, Caver maintains that the State failed to prove that he constructively possessed the marijuana.
It is well settled that,
“ ‘ “[i]n determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.” ’ Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). ‘“The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evi *6 dence in the light most favorable to the prosecution, a rational finder of fact could have’ found the defendant guilty beyond a reasonable doubt.” ’ Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). ‘“When .there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.” ’ Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 567 So.2d 848, 850 (Ala.Crim.App.1990). ‘The role of appellate courts is not to say what the facts are. Our role' ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).”
Gavin v. State, 891 So.2d 907, 974 (Ala.Crim.App.2003), cert. denied, 891 So.2d 998 (Ala.2004)(quoting Ward v. State, 610 So.2d 1190, 1191 (Ala.Crim.App.1992)).
“ ‘ “Circumstantial evidence alone is enough to support a guilty verdict of the most, heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.” White v. State, 294 Ala. 265, 272, 314 So.2d 857 (Ala.1975), cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). “Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.” Cochran v. State, 500 So.2d 1161, 1177 (Ala.Crim.App.1984), affirmed in pertinent part, reversed in part on other grounds, Ex parte Cochran, 500 So.2d 1179 (Ala.1985).’ ” Hollaway v. State, 979 So.2d 839, 843 (Ala.Crim.App.2007)(quoting White v. State, 546 So.2d 1014, 1017 (Ala.Crim.App.1989)).
“In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most .favorable to the prosecution. The test . to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of .guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130 (5th Cir.1971); Clark v. United States, 293 F.2d 445 (5th Cir.1961).”
Bradford v. State, 948 So.2d 574, 578-79 (Ala.Crim.App.2006)(quoting Cumbo v. State, 368 So.2d 871, 874-75 (Ala.Crim.App.1978)).
Caver was convicted of the unlawful possession of marijuana, a violation of 13A-12-213, Ala. Code 1975,' which provides that'“[a] person commits the crime of unlawful possession of [marijuana] in the first dégree if.. .[h]e possesses [marijuana] for other than personal use.”
It is undisputed that Caver was not in actual possession of the marijuana; thus, the State had to demonstrate that he was in constructive possession of the marijuana. In Ex parte J.C., 882 So.2d 274 (Ala.2003), the Alabama Supreme Court stated the following regarding constructive possession:
“ ‘In order to establish constructive possession, the State must prove “(1) [a]etual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control.”.’
“Ex parte Fitkin, 781 So.2d 182, 183 (Ala.2000)(quoting Bright v. State, 673 So.2d 851, 852 (Ala.Crim.App.1995)). Where contraband is seized inside a residence, ‘constructive possession can only arise “where the prohibited material is *7 found on the premises owned or controlled by the appellant.”’ Crane v. State, 401 So.2d 148, 149 (Ala.Crim.App.1981)(quoting Williams v. State, 340 So.2d 1144, 1145 (Ala.Crim.App.1976)). ‘ “When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that-the accused had knowledge of the presence of the controlled substances.” ’ Ex parte Tiller, 796 So.2d [310], at 312 [(Ala.2001)] (quoting Posey v. State, 736 So.2d 656, 658 (Ala.Crim.App.1997)).
“ While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some, evidence that connects a defendant with the contraband is required. Generally, the circumstances that provide that connection include:
“‘“(1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had-substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that illicit drugs will be found; (5) evidence that debris of the contraband was found on defendant’s person or with,his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.” ’
“Grubbs v. State, 462 So.2d 995, 997-98 (Ala.Crim.App.1984)(quoting Temple v. State, 366 So.2d 740, 743 (Ala.Crim.App.1978)).”
882 So.2d at 277-278.
In Posey v. State, 736 So.2d 656 (Ala.Crim.App.1997), officers executed a search warrant on the premises of Posey’s business and, in the shop area of the business, found two individuals, one of whom was in possession of illegal drugs. Officers continued into a trailer on the property and found Posey and a female in a back bedroom, which contained both men’s and female’s clothing; however, there was no testimony indicating that any of the clothing belonged to Posey. Officers found marijuana and drug paraphernalia in a dressér drawer of the bedroom in which Posey had been sleeping, as well as methamphetamine in the freezer in the kitchen. During the search, another individual also arrived on the premises. Posey was later convicted of trafficking in methamphetamine. At trial, to support a theory of constructive possession, the State presented evidence that Posey owned the trailer and paid property taxes on the trailer.'This Court in Posey determined that the evidence “did not establish that Posey was in exclusive possession of the trailer,” 736 So.2d at 658, and that although Posey owned the premises and was in the trailer when the methamphetamine was found, the evidence was “insufficient to prove that he had any more knowledge of its presence in the [freezer] than anyone else on the premises at the time of the search.” 736 So.2d at 659. This Court also noted in Posey that, when considering the marijuana found in the drawer in the bedroom with Posey, “we encounter the same constructive possession problem .... as exists with, the methamphetamine in the [freezer]” because “Posey was not alone in the bedroorn with the marijuana, nor was any evidence presented beyond ownership of the premises that would tend to identify him as the owner of the marijuana.” 736 So.2d at 659.
Likewise, in Meeker v. State, 801 So.2d 850 (Ala.Crim.App.2001), this Court found that evidence that the defendant’s driver’s *8 license was found on a TV stand in a spare bedroom of his brother’s residence and that he had visited his brother’s residence on two occasions was insufficient to prove that the defendant had any rights of possession to the house or that he had knowledge of the presence of marijuana that was found on the same TV stand in the spare bedroom.
In the present case, as in Posey and Meeker, there was no evidence indicating that Caver was in exclusive possession of the house. The only evidence presented by the State linking Caver to the marijuana found in the bedroom of the house was Officer Nettles’s testimony that, through his investigation, he determined that Caver lived at the residence, as well as letters addressed to Caver and a photograph of Caver and White. There was no evidence as to whether Caver had any knowledge that the marijuana was present in the house at the time the house was searched. There was no evidence of any of the factors enumerated above, which might have established a connection between Caver and the marijuana. We find the evidence insufficient to prove that Caver had exclusive rights of possession in the house or that he had knowledge of the presence of the marijuana confiscated during the search. Therefore, we reverse as to Caver’s conviction for first-degree possession of marijuana and render a judgment for Caver as to the offense.
Because we are reversing on the issue of the sufficiency of the evidence for Caver’s conviction of first-degree possession of marijuana, we pretermit any discussion of the other issues raised as it relates to this specific conviction.
We note that Caver was also convicted of first-degree possession of drug paraphernalia. However, unlike his challenge to his first-degree possession of marijuana conviction, Caver failed to preserve the issue whether the State presented sufficient evidence to support his conviction of first-degree possession of drug paraphernalia.
It is well settled that
“[t]he issue of the sufficiency of the evidence is preserved for review by a defendant’s motion for a judgment of acquittal that is entered at the end of the state’s case, at the close of the evidence, see [Ala. R. Crim. P.] 20.2(a), or after the verdict is entered, see [Ala. R. Crim. P.] 20.3. The motion must state the ground that the state failed to prove a prima facie case [or similar language]. See, e.g., Ex parte Maxwell, 439 So.2d 715 (Ala.1983). A defendant may also challenge the sufficiency of the evidence when moving for a new trial under [Ala. Crim. P.] 24.1 or when moving for an arrest of judgment under [Ala. R. Crim. P.] 24.2. [Ala. R. Crim. P.] 20.3(c); see Pearson [v. State], 601 So.2d [1119,] 1123-24 [ (Ala.Crim.App.1992) ]; Prather v. City of Hoover, 585 So.2d 257, 258 n. 1 (Ala.Cr.App.1991).”
Zumbado v. State, 615 So.2d 1223, 1241 (Ala.Crim.App.1993). Further,
“[t]he sufficiency of the evidence is subject to appellate review only where the defendant challenges the State’s lack of evidence by either a motion to exclude, a motion for judgment of acquittal, or a motion for new trial. Slaughter v. State, 424 So.2d 1365 (Ala.Crim.App.1982); see Johnson v. State, 500 So.2d 69 (Ala.Crim.App.1986). The appellant is bound by the specific objections that he made at trial and cannot raise a new ground on appeal. Bolding v. State, 428 So.2d 187 (Ada.Crim.App.1983).”
Washington v. State, 555 So.2d 347, 348 (Ala.Crim.App.1989).
At the conclusion of the State’s case, defense counsel made a motion for judg- *9 merit of acquittal “based on the fact that the State has failed to prove who this marijuana belonged to.” (R. 124.) However, he failed to raise any challenge to the sufficiency of the evidence for the charge of the unlawful possession of drug paraphernalia. At the conclusion of the presentation of the evidence, defense counsel merely “renewed the previous motion.” (R. 137.) Caver did not file a motion for a new trial in this ease. Accordingly, any challenge to the sufficiency of the evidence of Caver’s first-degree unlawful possession of drug paraphernalia conviction is not preserved for appellate review.
Consequently, although our reversal on the issue of the sufficiency of the evidence for Caver’s conviction of first-degree possession of marijuana pretermits any discussion of the other issues raised as they relate to that specific conviction, we will address one of Caver’s additional issues as it relates specifically to his conviction for first-degree possession of drug-paraphernalia.
II.
Caver argues that the circuit court erred in allowing the State to elicit testimony regarding his prior convictions. Specifically, Caver claims that “the doctrine of opening the door” is not applicable in this case and that the admission of the testimony that he was serving time for burglary and sodomy was highly and unfairly prejudicial. (Caver’s brief, at 20.) Caver maintains that the evidence that he was serving time for burglary and sodomy was irrelevant and had no purpose other than to show bad character.
During the direct examination of defense witness Deidra White, the following occurred:
“[Defense counsel:] Ma’am, can you tell the jurors what that is?
“[White:] That’s an open letter that I done wrote to Curtis Caver while he was in prison, but they sent it back due to the address. I had it wrong. I had a wrong address to it,
“[Defense counsel:] And you—is that your handwriting?
“[White:] Yes, sir.
“[Defense counsel:] And why was it sent back to you?
“[White:] I had—it was loaded with mail and I had to add another stamp to it.”
(R. 126-27.) On cross-examination, the following occurred:
“[Prosecutor:] Okay. You’ve been dating for eight years?
“[White:] Yes, ma’am.
“[Prosecutor:] And you would write him letters when he was in prison?
“[White:] Yes.
“[Prosecutor:] And how long was he in prison?
“[White:] He did five years.
“[Prosecutor:] Okay. For another case. Is that right?
“[White:] Yes, ma’am.
“[Prosecutor:] Do you know what it was?
“[Defense counsel:] Judge, I would object to what he’s in prison for.
“THE COURT: You opened it.
“[Defense counsel:] It’s not relevant.
“[Prosecutor:] Judge, he opened the door.
“THE COURT: You opened it up, [defense counsel]. She’s going to walk into it.
“[White:] I think burglary and sodomy.
“[Prosecutor:] Burglary and sodomy?
“[White:] Uh-huh.
“[Prosecutor:] Okay. And during that time you dated him still while he was in prison?
“[White:] Yes.
*10 “[Prosecutor:] And you said the letters that [defense counsel] was talking about that he showed you the picture of, this was sent to him?
“[White:] Yes, But they sent it back due to I guess the address, the address was wrong. And I had to give.it another stamp. They re-sent it back. That’s why they marked on the envelope.”
(R. 128-129.)
“The admission or exclusion of evidence is a matter within the sound discretion of the trial court.” Taylor v. State, 808 So.2d 1148, 1191 (Ala.Crim.App.2000), aff'd, 808 So.2d 1215 (Ala.2001). In Minor v. State, 914 So.2d 372 (Ala.Crim.App.2004), this Court stated that
“[i]t is well settled that ‘[w]hen one party opens the door to otherwise inadmissible evidence, the doctrine of “curative admissibility” provides the opposing party with “the right to rebut such evidence with other illegal evidence.” ’ Ex parte D.L.H., 806 So.2d 1190, 1193 (Ala.2001), quoting Charles W. Gamble, McElroy’s Alabama Evidence § 14.01 (5th ed.1996). ‘ “ ‘A party who has brought out evidence on a certain subject has no valid complaint as to the trial court’s action in allowing his opponent or adversary to introduce evidence on the same subject.’ ” ’ Id., quoting Hubbard v. State, 471 So.2d 497, 499 (Ala.Crim.App.1984), quoting in turn Brown v. State, 392 So.2d 1248, 1260 (Ala.Crim.App.1980).”
914 So.2d at 397. Further, in Wiggins v. State, 193 So. 3d 765 (Ala.Crim.App.2014), this Court stated:
“Section' 12-21-137, Ala. Code 1975, specifically provides: ‘The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him.’ ‘A defendant cannot complain about the state’s inquiring as to matters first brought into’ the case by the defendant.’ State v. Thomas, 820 S.W.2d 538, 545 (Mo.Ct.App.1991). “While evidence of a criminal defendant’s prior bad acts is generally inadmissible,' a defendant is not in a position to complain of the State inquiring about matters brought into the case by his own question.’ State v. Fassero, 256 S.W.3d 109, 118 (Mo.2008).
[[Image here]]
“‘“The doctrine of opening the door allows a party to explore otherwise inadmissible evidence on cross-examination when the opposing party has made unfair prejudicial use of related evidence on direct examination.” United States v. Lum, 466 F.Supp. 328, 334 (D.Del.) (citations omitted), aff'd without opinion, 605 F.2d 1198 (3d Cir.1979). “The doctrine ... is limited to testimony that might explain or contradict the testimony offered by the opposing party on direct examination; it cannot be ‘subverted into a rule for injection of prejudice.’ ” Id. at 335 (quoting United States v. Winston, 447 F.2d 1236, 1240 (D.C.Cir.1971)).’
“United States v. Durham, 868 F.2d 1010, 1012 (8th Cir.1989).”
219 So. 3d at 5.
Caver relies on Wiggins in arguing that the circuit court erred in allowing the State to elicit testimony regarding his pri- or, convictions because, he claims, defense was not -trying to make unfair prejudicial use of related evidence on direct examination and that the “sole purpose of the State’s questions on cross-examination was to inject prejudicial matter that would not otherwise [be] admissible.” (Caver’s brief, at 21.) Conversely, the State also cites Wiggins to support its contention that the State had the right to inquire into,the *11 matter because the defendant opened the door to the subject.
In the present case, defense counsel did open the door to the matter of Caver previously serving prison time. However, defense counsel’s question to White concerning Caver’s previous time in prison was designed to explain the reason the mail addressed to Caver was found in the house and to show that it was White who received and possessed the mail. Although the State could properly offer testimony to explain or contradict the testimony offered by the defense, the purpose for the State’s question regarding the specific offenses for which Caver was serving time was not merely for rebuttal purposes. Nor was the question designed to contradict testimony offered by the defense to correct an unfair prejudicial use of the evidence. Instead, it appears that the only purpose for the State’s introduction of the specific offenses was to inject the prejudicial nature of these offenses into the trial.
“[E]ven where the proffered evidence of collateral bad acts is relevant, its probative value must not be substantially outweighed by the danger of undue and unfair prejudice for the evidence to be admissible. Ex parte Smith, 581 So.2d 531, 535 (Ala.1991); Hargress v. City of Montgomery, 479 So.2d 1137 (Ala.1985); Thomas[ v. State], 625 So.2d [1149] at 1153[ (Ala.Crim.App.1992) ]; Jones v. State, 473 So.2d 1197 (Ala.Cr.App.1985). See McElroy’s Alabama Evidence, §§ 20.01 and 21.01(4). ‘Prejudicial’ in this context means ‘ “an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one.” ’ Averette v. State, 469 So.2d 1371, 1374 (Ala.Cr.App.1985), quoting State v. Forbes, 445 A.2d 8, 12 (Me.1982).
“Before the probative, value of evidence of collateral bad acts may be held to outweigh its potential prejudicial effect, the evidence must be ‘reasonably necessary’ to the state’s case. Bush[ v. State], 695 So.2d [70] at 85[ (Ala.Crim.App.1995) ]; Averette, 469 So.2d at 1374.”
R.D.H. v. State, 775 So.2d 248, 253-54 (Ala.Crim.App.1997). See also Horton v. State, 217 So.3d 27 (Ala.Crim.App.2016).
Therefore, because the State’s question went beyond the.scope of the doctrine of curative admissibility, allowing it was erroneous.
Moreover, because of the lack of evidence to support a finding that Caver had constructive possession of the marijuana and the drug paraphernalia, we cannot say that the error in allowing the State to elicit testimony that Caver had previously been convicted of sodomy and burglary was harmless. See J.D.W. v. State, 176 So.3d 863, 870 (Ala.Crim.App.2014). “[T]he harmless error rule excuses the error' of admitting inadmissible evidence only [when] the evidence was so innocuous 'or cumulative that it could not have contributed substantially to the adverse verdict.” Ex parte Baker, 906 So.2d 277, 284 (Ala.2004). Accordingly, we must also reverse Caver’s conviction and sentence for first-degree possession‘of drug paraphernalia, and remand this case for proceedings consistent with this opinion.
REVERSED; JUDGMENT RENDERED AS TO CONVICTION AND SENTENCE FOR FIRST-DEGREE POSSESSION OF MARIJUANA; REMANDED AS TO CONVICTION AND SENTENCE FOR FIRST-DEGREE POSSESSION OF DRUG PARAPHERNALIA.
Welch, J., concurs. Kellum, J., concurs in the result. Joiner, J., concurs in part, and dissents in part, with opinion. Windom, ■ P.J., recuses herself.